UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID K. LAMB,

                    Petitioner,

                                                CASE NO. 03-CV-73587
         v.                                     JUDGE JOHN CORBETT O'MEARA
                                                MAGISTRATE JUDGE PAUL J. KOMIVES

CARMEN PALMER,

                    Respondent.[1]
_____/


# REPORT AND RECOMMENDATION

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      E.    *Arrest Related Claims (Claims II and III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      F.    *Prosecutorial Misconduct (Claims IV-V, VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            1.    *Suppression of Exculpatory Evidence (Claims IV-V)* . . . . . . . . . . . . . . . . . . . . . . . . 17
                  a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
                  b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            2.    *Comments (Claim VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                  a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                  b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
      G.    *Bind Over and Sufficiency of Information (Claims VI & VIII)* . . . . . . . . . . . . . . . . . . . . . . . . 23
            1.    *Variance (Claim VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
            2.    *Sufficiency of Bind Over (Claim VIII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      H.    *Sufficiency of the Evidence (Claim IX)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
            2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
      I.    *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
            1.    *Trial Counsel (Claims IV-V & X-XII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
                  a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
                  b. Failure to Object to Suppression of Evidence (Claims IV & V) . . . . . . . . . . . . . . . 31
                  c. Failure to Present Alibi Defense (Claim X) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
                  d. Failure to Request Remmer Hearing (Claim XI) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
                  e. Cumulative Errors (Claim XII) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
            2.    *Appellate Counsel (Claims I, X & XII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

---

[1]By Order entered this date, Carmen Palmer has been substituted in place of Kurt Jones as the proper respondent in this action.

                    a. Denial of Counsel (Claim I) .......................................... 35
                    b. Failure to Raise Claims (Claims X & XII) .............................. 39
        J.      *Conclusion* .................................................................. 39
III.        <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> ..................................... 40

*       *       *       *       *

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.     <u>REPORT</u>:

A.      *Procedural History*

        1.      Petitioner David K. Lamb is a state prisoner, currently confined at the Michigan Reformatory in Ionia, Michigan.

        2.      Petitioner was convicted of four counts of first degree murder on the alternative theories of premeditation and felony murder, MICH. COMP. LAWS § 750.316; armed robbery, MICH. COMP. LAWS § 750.529; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS 750.227b, following a jury trial in the Wayne County Circuit Court. On December 14, 1999, he was sentenced to a four mandatory terms of life imprisonment without parole on the murder convictions, and a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

        3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

        I.      DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN DENYING THE MOTION TO DISMISS BASED ON THE LACK OF PROBABLE CAUSE TO ARREST DEFENDANT.

        II.     DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN FAILING TO SUPPRESS HIS STATEMENT.

III.     DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE CONVICTIONS; ALTERNATIVELY, THE MOTION FOR DIRECTED VERDICTS SHOULD HAVE BEEN GRANTED.

IV.      DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN DENYING THE MOTION FOR MISTRIAL BASED ON THE PROSECUTOR'S CLOSING ARGUMENTS; ALTERNATIVELY, THE PROSECUTOR'S CLOSING ARGUMENTS WERE IMPROPER, DENYING HIM HIS RIGHT TO A FAIR TRIAL.

In a supplemental *pro se* brief, petitioner raised the following additional claims:

I.       WHERE AS HERE, THE CIRCUIT COURT'S DECISION DENYING THE MOTION TO QUASH BIND OVER ON THE FIRST DEGREE MURDER COUNTS WAS CONTRARY TO THE FACTS PRESENTED AT THE PRELIMINARY EXAMINATION, AS WELL AS THE LAW, THAT DECISION WAS AN ABUSE OF DISCRETION AND SHOULD BE REVERSED.

II.      THE TRIAL JUDGE DENIED THE DEFENDANT DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN IT SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT.

III.     THE PROSECUTOR DENIED THE DEFENDANT DUE PROCESS WHEN IT KNOWINGLY USED PERJURED TESTIMONY OR ALLOWED UNTRUE TESTIMONY TO GO UNCORRECTED.

IV.      THE PROSECUTOR DENIED THE DEFENDANT DUE PROCESS WHEN IT KNOWINGLY WITHHELD EVIDENCE DURING THE EVIDENTIARY HEARING.

V.       IT WAS POLICE MISCONDUCT WHEN THE WARRANTLESS ARREST AND DETENTION WAS USED AS A TOOL TO GENERALLY MARSHAL EVIDENCE AGAINST THE DEFENDANT WITHOUT PROMPT JUDICIAL DETERMINATION OF PROBABLE CAUSE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Lamb*, No. 225989, 2002 WL 31955204 (Mich. Ct. App. Dec. 17, 2002) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard

order. *See People v. Lamb*, 469 Mich. 860, 666 N.W.2d 672 (2003).

5. On September 18, 2003, petitioner filed an application for the writ of habeas corpus challenging his state court convictions. Petitioner raised three claims in support of his application: (1) ineffective assistance of counsel for failing to request a hearing on extraneous jury influences; (2) illegal arrest and perjury to fabricate probable cause; and (3) denial of counsel on appeal. Petitioner subsequently filed an amended petition, asserting four additional claims: (1) warrantless arrest and detention; (2) ineffective assistance of counsel for failing to object to prosecutorial misconduct; (3) ineffective assistance of counsel for failing to present an alibi defense; and (4) ineffective assistance counsel based on the cumulative effects of counsel's errors. On March 4, 2005, the Court entered an Order granting petitioner's motion to stay and holding the case in abeyance pending petitioner's exhaustion of all his claims.

6. Meanwhile, on November 24, 2004, petitioner filed a motion for new trial in the trial court, which the trial court construed as a motion for relief from judgment pursuant to MICH. CT. R. 6.500-.509. Petitioner's motion raised the following claims:

    I. THE DEFENDANT SUFFERED AN ACTUAL ABSENCE OF COUNSEL ON APPEAL AS OF RIGHT WHERE THE MICHIGAN COURT OF APPEALS RULED WITHOUT COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS AND *US v CRONIC*, WHERE PREJUDICE IS PRESUMED, THUS, CAUSING A STRUCTURAL DEFECT.

    II. THE DEFENDANT WAS DENIED HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS WHERE THERE WAS A REASONABLE PROBABILITY OF A DIFFERENT RESULT HAD THE PROSECUTION TURNED OVER EXCULPATORY EVIDENCE THAT WAS MATERIAL IN VIOLATION OF *BRADY* WHERE DEFENDANT WAS ACTUALLY INNOCENT AND WHERE COUNSEL FAILED TO SUBJECT THIS *BRADY* VIOLATION TO A MEANINGFUL ADVERSARIAL TESTING. *CRONIC*.

III. THE DEFENDANT WAS DENIED HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS WHERE THERE WAS A REASONABLE PROBABILITY OF A DIFFERENT RESULT HAD THE PROSECUTION TURNED OVER IMPEACHMENT EVIDENCE THAT WAS MATERIAL IN VIOLATION OF *BAGLEY*. AND WHERE COUNSEL FAILED TO SUBJECT THIS *BRADY* VIOLATION TO A MEANINGFUL ADVERSARIAL TESTING.

IV. THE DEFENDANT WAS DENIED HIS FOURTH AMENDMENT [RIGHTS] WHERE INVESTIGATOR ADAMS' WITHHOLDING OF *BRADY* INFORMATION AND PERJURY CAUSED A FATAL VARIANCE WHERE HIS WITHHOLDING OF EXCULPATORY EVIDENCE CAUSED THE PROSECUTOR TO AMEND THE INFORMATION TO ADD ARMED ROBBERY AND FELONY MURDER WHERE THE DEFENDANT WAS ACTUALLY INNOCENT.

V. THE DEFENDANT WAS DENIED HIS FOURTEENTH AMENDMENT RIGHT WHERE THE FATAL VARIANCE CAUSED A JURISDICTIONAL DEFECT WHICH CANNOT BE WAIVED OR PROCEDURALLY DEFAULTED WHERE THE DEFENDANT IS ACTUALLY INNOCENT.

VI. THE DEFENDANT WAS DEPRIVED OF HIS FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL WHERE THE PROSECUTOR ARGUED THAT THE PANTS THE DEFENDANT WAS ARRESTED IN WERE THE SAME PANTS USED DURING THE CRIME WITHOUT ANY EVIDENCE AND WHERE COUNSEL FAILED TO OBJECT. *STRICKLAND*.

VII. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL WHERE COUNSELS FAILED TO PRESENT AN ALIBI DEFENSE, FAILED TO INVESTIGATE THE ALIBI WITNESSES, AND FAILED TO ARGUE AND INVESTIGATE THESE CLAIMS ON APPEAL AS OF RIGHT IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENTS [sic].

VIII. THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL WHEN COUNSEL FAILED TO REQUEST A "REMMER" HEARING, DESPITE BEING AWARE OF CREDIBLE ALLEGATIONS AND ACTUAL INSTANCES OF EXTRANEOUS JURY INFLUENCES.

IX. THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF BOTH TRIAL AND APPELLATE COUNSEL WHERE COUNSEL'S

CUMULATIVE ERRORS RENDERED THE TRIAL AND APPEAL UNREALIABLE IN VIOLATION OF THE FOURTEENTH AMENDMENT WHERE THE DEFENDANT IS ACTUALLY INNOCENT.

On November 10, 2005, the trial court denied petitioner's motion for relief from judgment. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Lamb*, 477 Mich. 942, 723 N.W.2d 818 (2006); *People v. Lamb*, No. 266812 (Mich. Ct. App. June 22, 2006).

7. On December 12, 2006, petitioner filed a motion to lift the stay as well as an amended petition raising twelve claims:

I. THE DEFENDANT SUFFERED AN ACTUAL ABSENCE OF COUNSEL ON APPEAL AS OF RIGHT WHERE THE MICHIGAN COURT OF APPEALS RULED WITHOUT COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS AND *US v CRONIC*, WHERE PREJUDICE IS PRESUMED, THUS, CAUSING A STRUCTURAL DEFECT.

II. THE TRIAL JUDGE DENIED THE DEFENDANT['S] DUE PROCESS RIGHTS TO A FAIR TRIAL WHEN IT SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT.

III. IT WAS POLICE MISCONDUCT WHEN THE WARRANTLESS ARREST AND DETENTION WAS USED AS A TOOL TO GENERALLY MARSHAL EVIDENCE AGAINST THE DEFENDANT WITHOUT A PROMPT JUDICIAL DETERMINATION OF PROBABLE CAUSE.

IV. THE DEFENDANT WAS DENIED HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS WHERE THERE WAS A REASONABLE PROBABILITY OF A DIFFERENT RESULT HAD THE PROSECUTION TURNED OVER EXCULPATORY EVIDENCE THAT WAS MATERIAL IN VIOLATION OF *BRADY* WHERE DEFENDANT WAS ACTUALLY INNOCENT AND WHERE COUNSEL FAILED TO SUBJECT THIS *BRADY* VIOLATION TO A MEANINGFUL ADVERSARIAL TESTING. *CRONIC*.

V. THE DEFENDANT WAS DENIED HIS FIFTH AND FOURTEENTH

AMENDMENT RIGHTS WHERE THERE WAS A REASONABLE PROBABILITY OF A DIFFERENT RESULT HAD THE PROSECUTION TURNED OVER IMPEACHMENT EVIDENCE THAT WAS MATERIAL IN VIOLATION OF *BAGLEY*. AND WHERE COUNSEL FAILED TO SUBJECT THIS *BRADY* VIOLATION TO A MEANINGFUL ADVERSARIAL TESTING.

VI. THE DEFENDANT WAS DENIED HIS FOURTEENTH AMENDMENT RIGHT WHERE THE FATAL VARIANCE CAUSED A JURISDICTIONAL DEFECT WHICH CANNOT BE WAIVED OR PROCEDURALLY DEFAULTED WHERE THE DEFENDANT IS ACTUALLY INNOCENT.

VII. THE DEFENDANT WAS DEPRIVED OF HIS FOURTEENTH AMENDMENT RIGHT TO A FAIR TRIAL WHERE THE PROSECUTOR ARGUED THAT THE PANTS THE DEFENDANT WAS ARRESTED IN WERE THE SAME PANTS USED DURING THE CRIME WITHOUT ANY EVIDENCE AND WHERE COUNSEL FAILED TO OBJECT.

VIII. WHERE AS HERE, THE CIRCUIT COURT'S DECISION IN DENYING THE MOTION TO QUASH BIND OVER ON THE FIRST DEGREE MURDER COUNTS WAS CONTRARY TO THE FACTS PRESENTED AT THE PRELIMINARY EXAMINATION, AS WELL AS THE LAW, THAT DECISION WAS AN ABUSE OF DISCRETION AND SHOULD BE REVERSED.

IX. DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE CONVICTIONS; ALTERNATIVELY, THE MOTION FOR DIRECTED VERDICT SHOULD HAVE BEEN GRANTED.

X. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL WHERE COUNSELS FAILED TO PRESENT AN ALIBI DEFENSE, FAILED TO INVESTIGATE THE ALIBI WITNESSES, AND FAILED TO ARGUE AND INVESTIGATE THESE CLAIMS ON APPEAL AS OF RIGHT IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENTS [sic].

XI. THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL AND A FAIR TRIAL WHEN COUNSEL FAILED TO REQUEST A "REMMER" HEARING, DESPITE BEING AWARE OF CREDIBLE ALLEGATIONS AND ACTUAL INSTANCES OF EXTRANEOUS JURY INFLUENCES.

XII.    THE DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF BOTH TRIAL AND APPELLATE COUNSEL WHERE COUNSEL'S CUMULATIVE ERRORS RENDERED THE TRIAL AND APPEAL UNREALIABLE IN VIOLATION OF THE FOURTEENTH AMENDMENT WHERE THE DEFENDANT IS ACTUALLY INNOCENT.

8.     Respondent filed an answer to the amended petition on December 27, 2007. Respondent contends that: (1) petitioner's first, fourth through seventh, and tenth through twelfth claims are barred by petitioner's procedural default in the state courts based on petitioner's failure to raise these claims on direct appeal; (2) petitioner's second and third claims are barred by petitioner's procedural default based on petitioner's failure to object at trial, and are without merit; (3) petitioner's eighth claim is not cognizable on habeas review; and (4) petitioner's ninth claim is without merit.

9.     Petitioner filed a reply to respondent's answer on January 18, 2008.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted in connection with the robbery and murder of four individuals at the Prestige Barbeque in Detroit, on the evening of April 3-4, 1999. The evidence adduced at trial was summarized in the prosecutor's brief in the Michigan Court of Appeals:

> On April 3, 1999, Karen Jaks-Bouchard went to work, at the Prestige Barbecue, as a cashier/delivery person. The cooks, Tony Evans and Paul Scott, were also present. Since it was Easter weekend, the restaurant was busy. The owner, Jamal (Jim) Akrawi, arrived with his brother, Abed, and Tommy, his 12 year old son (T 11/19/99, 224-227). Jamal only kept enough money in the cash register to make change for the customer. He kept the rest of the money and the large bills on his person. At 9:30 p.m., the end of Tony's shift, Jamal paid Tony for the week. He took the cash from his pocket, where he had several hundred dollars (T 11/9/99, 244, 11/15/99, 16-22).
>
> Jaks-Bouchard made a delivery just prior to midnight- closing time. When she returned, the restaurant was closed, the front door locked, and the lights, in front, were off. She entered through the back door, which was still opened. The lights in the back and the kitchen were on (T 11/9/99, 230, 11/10/99, 23-24).
>
> Paul Evans and Jamal Akrawi were in the kitchen, and Jaks-Bouchard gave

Jamal the money from the delivery. Cordale Henry, also know as "Q", and a man, introduced as his uncle, were also inside–either in the kitchen or restaurant area. Q had worked at the Prestige in the previous summer. He was about six feet tall and his hair was tightly braided in com rows (T 11/19/99, 230-233, 11/10/99, 39).

Jaks-Bouchard cleaned up and, around 12:30 a.m., got her bicycle from the hallway, to go home. Jamal, his brother, Tommy, Paul, Henry and Henry's uncle were still there. Jamal caught up with Jaks-Bouchard at the front door and gave her $20 as an Easter tip, which he took from his pocket. Henry was also at the front door and he helped her get her bicycle out the door (T 11/9/99, 235, 11/10/99, 25).

When Jaks-Bouchard had pedaled a house away from the restaurant, she heard something that sounded like firecrackers. She thought it may have been gunfire, so she hurried home. She only lived four blocks from the restaurant, so it took her less than five minutes to get home. She told her boyfriend, Larry Osowski, what happened, and she telephoned the restaurant. No one answered, so she left a message (T 11/9/99, 233-238).

While Jaks-Bouchard was still on the telephone, Osowski answered the door. It was Q. Jaks-Bouchard told Osowski not to let Q inside. Osowski knew Q from working at the Prestige Barbecue. After a conversation, Q walked down the driveway toward the street and walked around a red car to the sidewalk across the street. The car drove off, going the wrong way on the one-way street (T 11/10/99,64-66,68-69).

At 6:30 or 7:30, Hana Akrawi, Jamal's wife, telephoned. Hana Akrawi was crying and upset because she was missing her family. Jaks-Bouchard called 911 and the Fifth Precinct. (T 11/9/99, 239-244). Osowski walked to the Prestige Barbecue. He saw Jamal Akrawi's white Volvo at the rear of the restaurant. The police pulled up and asked him questions. He did not go inside the restaurant (T 11/10/99, 62-71).

The police arrived at the Prestige Barbecue at 7:35 a.m. They discovered that the front door to the restaurant was ajar. Three members of the Akrawi family were found dead by the front door, and Paul Scott was found by the kitchen area (T 11/15/99, 66). 11 casings and five slugs were recovered from the murder scene. Six of the casings were .380 and five were .25 (T 11/15/99, 87-92).

Jamal was laying just inside the front door. He died as a result of three gunshot wounds to the head, all fired from close range (T 11/16/99, 179-182). Abdul's body was in a kneeling position with his rosary beads in his hand. He died as a result of a single gunshot wound to the back of the head (T 11/16/99, 185.) Tommy was found face down on the ceramic floor with a pool of blood around his head. Tommy died as a result of a gunshot wound to the back of the head, fired at close range (T 11/16/99, 183-184 ). Paul Scott's body was dragged across the floor, leaving a bloodstain smear on the tile that extended 52 feet. His pants were pulled toward his knees (T 11/15/99, 69-71, 78-83, 96). Paul died as a result of multiple gunshot wounds: three to the back and one to the head (T 11/16/99, 186-189).

Jamal Akrawi's left pant's pocket was turned out and he had 10 cents on his person. Abdul had 35 cents (T 11/15/99, 83-85). The cash register was open and empty. The insert that goes inside the drawer was under the service counter, outside of plain view. The insert contained small bills, 5's and 1's (T 11/15/99, 71, 73, 86,

115).

Defendant was Cordale Henry's uncle (T 11/10/99, 79-85). When Defendant was arrested on April 6th, he had his hair braided in corn rows. However, when Defendant was placed in a lineup, Defendant had started to undo his braids. He only had time to take the braids out of the right side of his head, so his hair on the right side was sticking out. The left side of his head was still braided (T 11/15/99, 142-144). Furthermore, when Defendant was arrested, he was wearing the same clothes that he wore in the evening of April 3rd and the early morning hours of April 4th (T 11/10/99, 127-134, 144). These items were taken into evidence (T 11/15/99, 131-132, 141, 11/16/99, 23). Scientific test preformed on Defendant['s] clothing detected gunshot residue on Defendant['s] jacket and pants. Defendant's jeans had gunshot residue in the front pockets, both left and right pockets, indicating that Defendant fired a gun, then, placed his hands in his pockets. The jacket had gunshot residue in the right and left sleeve cuffs, and the upper right and left front panel and in both right and left front pockets (T 11/16/99, 137-138, 143, 146-147).

When Defendant first spoke to the police, he denied ever being in the restaurant or being involved in the crime (T 11/15/99, 184-185). Then, Defendant made a written statement stating that he went to Q's house on that Saturday night. Defendant stated that Tone was also there, and that Tone had a small nickel plated automatic handgun, possibly a .22 or .25. Q had another small handgun: a .22.0r.25 or .380 and some bullets, which he shared with Tone (T 11/15/99, 175-176).

Defendant told police that Tone sounded mad, and said that he had been fired from the restaurant. Q and Defendant were going to go to the bar, but Q told Defendant that they had to make a stop at the Prestige Barbecue so that Tone could "holler at my man." Q and Tone got into Tone's car and Defendant followed them in his own car. When they arrived at the restaurant, Tone and Q went inside through the side door. Defendant entered through the front door and a white lady, who was cleaning up, asked him who he was. He told her that he was Q's uncle. Q and Tone were in the back and Defendant stayed in the front. Tone and the owner argued over Tone being fired and the owner owing Tone some money (T 11/15/99, 176-178).

As the white lady was leaving, the owner paid her some money. When he returned, he and Tone argued some more. Tone pulled out a handgun, shooting both the owner, and the owner's 12 year old son, in the head. Defendant stated that he panicked and ran to the front door. He heard more shots coming from the back ofthe restaurant. The door was hard to open because the man's body was laying in front ofthe door. When he made it outside, he heard more shots fired. He went to his car and saw Q and Tone running out the front door to Tone's car. They all left (T 11/15/99, 179.180).

Defendant told police that, when Tone was shooting the owner, Q was in the back of the restaurant with the black cook and the older man. Defendant stated that he did not have a gun and did not shoot anyone. Q and Tone were friends from the restaurant and working together at Technicolor. Defendant stated that he never heard Q and Tone talk about robbing the restaurant. Defendant did not know any of the people at the restaurant (T 11/15/99, 180-182).

Tony Evans, testified that he worked at the Prestige Barbecue as the head cook, on and off for seven years. He knew Q from the barbecue, but did not socialize, and he did not even know where Q lived. Evans did not see Q on April 3rd (T 11/15/99, 18-19, 27).

Pl.'s Br. on Appeal, in *People v. Lamb*, No. 225989 (Mich. Ct. App.), at 5-9.[2]

C.      *Procedural Default*

Respondent first contends that a number of petitioner's claims are barred by petitioner's procedural default in the state courts, either because petitioner failed to raise these claims on direct appeal or failed to object at trial.  Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

---

[2]Respondent's Rule 5 materials do not include the state court trial transcripts.  However, the factual summary set forth above is consistent with both the Michigan Court of Appeals's summary of the evidence and the factual statement in the brief filed by petitioner's counsel in the Michigan Court of Appeals.  *See Lamb*, 2002 WL 31955204, at *5-*6, slip op. at 5-6; Def.-Appellant's Br. on Appeal, in *People v. Lamb*, No. 225989 (Mich. Ct. App.), at 6-11.

Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims either at trial or on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A consideration of whether counsel was ineffective in turn requires a consideration of the merits of petitioner's claims. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the

Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Arrest Related Claims (Claims II and III)*

In his second and third habeas claims, petitioner challenges the validity of his arrest and detention following his arrest, and argues that both the pants seized from him and the statement he gave to the police should have been suppressed. More specifically, in these claims petitioner contends that: (1) the trial court erred in placing the burden of proof on him to show an absence of consent; (2) the police effected a warrantless entry into his home and warrantless arrest; and (3) his

detention was not based on probable cause but was merely used as a tool to gather evidence against petitioner. In a motion to amend his application which is granted in a separate order, petitioner also raises a more general claim that the police lacked probable cause to arrest him. The Court should conclude that these claims are not cognizable on habeas review.

It is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge either the arrest leading to his incarceration or the preliminary procedures employed prior to his trial.

Petitioner does contend that his subsequent statement to the police and the police seizure of his pants was the fruit of his initial arrest, and that he was held without probable cause so that the police could marshal further evidence against him. These claims, however, are not cognizable on habeas review. because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also, Cardwell v. Taylor*, 461 U.S. 571, 571-72 (1983) (per curiam). Thus, petitioner's claim is not cognizable on habeas review if he had an

adequate opportunity to present his claim to the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985); *see also, Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).

A claim that a confession was tainted by an illegal arrest and should have been excluded is a claim based on the Fourth Amendment, and thus falls with the rule of *Stone*. *See Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam); *Jones v. Johnson*, 171 F.3d 270, 277-78 (5th Cir. 1999). Likewise, a claim that the state impermissibly delayed arraignment following arrest is a claim based on the Fourth Amendment, and is therefore barred by the *Stone* rule. *See Franklin v. McBride*, No. 96-2399, 1997 WL 73228, at *1 (7th Cir. Feb. 5, 1997); *Ben-Yisrayl v. Davis*, 245 F. Supp. 2d 960, 968 (N.D. Ind. 2002). Further Michigan provides a mechanism to raise and litigate Fourth Amendment claims, and there is no evidence that this mechanism was not available to petitioner in the state courts. *See Markham v. Smith*, 10 Fed. Appx. 323, 327 (6th Cir. 2001); *Machacek*, 213 F.3d at 952. Petitioner's argument, rather, attacks the correctness of the state courts' factual findings and conclusions of law. However, in determining whether a mechanism for litigating the Fourth Amendment claims existed, it is irrelevant whether the state courts came to the correct conclusion on petitioner's claims. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim

does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986); *see also*, *Willett*, 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994).

Thus, neither petitioner's allegedly illegal arrest nor the alleged subsequent use of evidence obtained as a result of that arrest provides a basis upon which a writ of habeas corpus may issue. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

F.    *Prosecutorial Misconduct (Claims IV-V, VII)*

Petitioner next raises several claims of prosecutorial misconduct. In his fourth and fifth claims, petitioner contends that the prosecutor suppressed exculpatory substantive and impeachment evidence. In his seventh claim, petitioner contends that he was denied a fair trial by the prosecutor's comments at trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Suppression of Exculpatory Evidence (Claims IV-V)*

Petitioner contends that the prosecution suppressed exculpatory evidence relating to the amount of money found in the store, which would have constituted both exculpatory substantive evidence and exculpatory impeachment evidence. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

a.    *Clearly Established Law*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by

the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. However, "there is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Thus, in order to establish a *Brady* violation, petitioner must show that the prosecutor (1) withheld evidence that was both (2) favorable to the accused and (3) material to guilt or punishment. *See United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Furthermore, regardless of the exculpatory nature or materiality of the evidence withheld by the prosecution, "[n]o *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (citations omitted) (internal quotation omitted); *accord United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). Thus, petitioner's claim raises three questions: (1) was the evidence suppressed by the prosecution in that it was not known to petitioner and not available from another source?; (2) was the suppressed evidence favorable or exculpatory?; and (3) was the evidence material to the question of petitioner's guilt? *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. If all three of these questions are answered in the affirmative, petitioner has established a constitutional error entitling him to the writ of habeas corpus, and "there is no need for further harmless-error review." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995). If, on the other hand, any of these three questions is answered in the negative, then petitioner has failed to establish

a *Brady* violation.

### b. Analysis

Petitioner's claim is based on the testimony of Investigator Adams and Officer Rem. At the preliminary examination, Investigator Adams testified that only $35.50 was found in the store, *see* Prelim. Exam Tr., at 99-100, and the prosecutor argued that the lack of any other money found in the store supported a bind over on the armed robbery and felony murder charge because the store should have had more money on hand, *see id*. at 105-06, 111-12. At trial, however, Officer Rem testified that he photographed bundled money in a desk drawer in the back office of the store. *See* Trial Tr., Vol. IV, at 112-14. Officer Rem testified that the $35.50 was found on the body of one of the victims in the front of the store. *See id*. at 110. Petitioner contends that this money was purposely withheld by the police to make it appear that he had taken it. The Michigan Court of Appeals rejected petitioner's claim, explaining:

> Contrary to defendant's claim, the officers' testimony concerning the amount of money found at the scene, being the area where the bodies were found, is consistent. Further, through defense counsel's cross-examination of the officer at trial, the jury was apprised that additional money was found in a back room of the restaurant. In addition, defendant has not established a *Brady* violation, where he has failed to persuasively argue that evidence of additional money found in a back office of the restaurant underneath a desk is favorable, or that such disclosure would have changed the outcome of the proceedings.

*Lamb*, 2002 WL 31955204, at *10, slip op. at 10. The Court should conclude that this determination was reasonable.

First, petitioner has failed to show suppression of the evidence because the evidence regarding the other money in the store came out at trial. Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the factfinder, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United*

*States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). "[I]f previously undisclosed evidence is disclosed, as here, during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994). Petitioner offers no argument why counsel could not recall Adams to further pursue this matter, or otherwise take advantage of whatever exculpatory value the additional evidence may have had.

Second, petitioner has failed to demonstrate that the court of appeals's conclusion that the evidence was neither favorable nor material was unreasonable. On the contrary, the fact that there was money found in a desk drawer in an area apart from the area where the shootings occurred provides no favorable or material evidence that the shootings did not occur during the commission or attempted commission of a robbery. The evidence established that the restaurant was busy on the day of the murders; the owner only kept enough money in the cash register to make change but kept the rest of the money–including large bills–on his person, and that owner was found lying face down on the floor with his pocket turned out and no money on his person; and the restaurant's cash register was open and empty. As the court of appeals explained in rejecting petitioner's sufficiency of the evidence claim, the validity of the underlying robbery conviction was not called into question by the fact that other valuables which could have been stolen were left behind. *See Lamb*, 2002 WL 31955204, at *6 n.2, slip op. at 6 n.2. The evidence "was not material evidence, because the prosecution was not obligated to show that a robbery actually occurred." *Mahaday v. Cason*, 367 F. Supp. 2d 1107, 1118 (E.D. Mich. 2005).

Finally, the evidence was not material because, with respect to each victim, petitioner was convicted alternatively of first degree premeditated murder and first degree felony murder. The allegedly suppressed evidence went only to the robbery element of the felony murder charges. Even assuming that the jury would have acquitted petitioner of those charges had the evidence of the other money been disclosed earlier, petitioner makes no argument that the jury would also have acquitted him on the premeditated murder charges. Thus, the result of the proceeding–petitioner's conviction and sentence on four counts of first degree murder–would not have been different even if petitioner was acquitted on the felony murder charges.

For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on his *Brady* claims.

### 2. *Comments (Claim VII)*

Petitioner also contends that he was denied a fair trial by the prosecutor's comments during rebuttal argument. Specifically, during rebuttal argument the prosecutor suggested that the pants which petitioner was wearing when he was arrested were the same ones that he was wearing on the night of the murders, and that petitioner's girlfriend's testimony on this point was not credible. *See* Trial Tr., Vol. VII, at 48. Petitioner contends that this comment misrepresented the facts and constituted improper bolstering. The Court should disagree.

### a. *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation

omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Id.* (internal quotation omitted).

### b. Analysis

Contrary to petitioner's claim, the prosecutor's argument neither misstated the evidence nor constituted impermissible bolstering.  Improper bolstering occurs through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury."  *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).  The prosecutor's comment in no way suggested that the prosecutor had knowledge of any facts beyond those presented to the jury; rather, the prosecutor was merely commenting that the pants were consistent with the witnesses' descriptions of the pants petitioner was wearing the night of the murders.  Further, the prosecutor's argument that the pants were the same ones petitioner wore on the night of the murders did not misstate the evidence.  The prosecutor's comment was a fair inference from the evidence, particularly the evidence that the pants were consistent with the witnesses' descriptions and that gunshot residue was found on the pants. Thus, the prosecutor's comment was a permissible characterization based on the evidence admitted at trial, and was not improper.  *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995)

(comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Bind Over and Sufficiency of Information (Claims VI & VIII)*

Petitioner next raises two claims challenging the sufficiency of the pretrial proceedings.  In Claim VI, petitioner contends that a fatal variance caused a jurisdictional defect.  In Claim VIII, he contends that the trial court improperly bound him over on the first degree murder counts.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Variance (Claim VI)*

Petitioner first contends that a fatal variance occurred because the prosecution's amendment of the information at the preliminary examination was based on a *Brady* violation and perjury.  As explained above, petitioner has failed to establish a *Brady* violation with respect to the money found in the back office of the restaurant.  In any event, there was no variance here.  "A variance to the indictment occurs when the charging terms of the indictment are unchanged, but where the evidence at trial proves facts materially different from those alleged in the indictment."  *United States v. Swafford*, 512 F.3d 833, 841 (6th Cir. 2008) (internal quotation omitted).  Here, there was no material difference between the facts proved at trial and those alleged in the information because

the information was amended to add the felony murder and armed robbery charges at the preliminary examination, well before trial. Nor has petitioner proffered any reason why the alleged perjury at the preliminary examination deprived the trial court of jurisdiction. Even if petitioner's constitutional rights were violated at the preliminary examination or trial, this alone would not have deprived the trial court of subject matter jurisdiction over the charges lodged against petitioner. And, in any event, "[t]he question of whether the state courts had jurisdiction is one for those courts." *Hunt v. Tucker*, 875 F. Supp. 1487, 1522 (N.D. Ala. 1995), *aff'd*, 93 F.3d 735 (11th Cir. 1996) (per curiam); *see also Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969) ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged."). "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 2. *Sufficiency of Bind Over (Claim VIII)*

Petitioner also contends that his bind over by the district court for trial was improper because there was insufficient evidence to support a bind over and because the trial court incorrectly applied the law. These claims do not state cognizable bases for habeas relief. First, there is no general constitutional right to a preliminary examination before trial. *See Gerstein v. Pugh*, 420 U.S. 103, 125 n.26 (1975); *Harris v. Neil*, 437 F.2d 63, 64 (6th Cir. 1971). Thus, a state court's failure to even hold a preliminary examination does not present a cognizable habeas claim. *See Scott v. Bock*, 241

F. Supp. 2d 780, 793 (E.D. Mich. 2003) (Lawson, J.). Similarly, therefore, a claim that the evidence offered at a preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review. *See David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.). Second, it is an "established rule that illegal arrest or detention does not void a subsequent conviction." *Gerstein*, 420 U.S. at 119 (citing *Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Because petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge the preliminary procedures employed prior to his trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.     *Sufficiency of the Evidence (Claim IX)*

Petitioner next argues that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, first degree murder includes "[*m*]*urder* committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping." MICH. COMP. LAWS § 750.316(1)(b) (emphasis added), as well as murder

committed with premeditation, MICH. COMP. LAWS § 750.316(1)(a). Under either theory of first degree murder, the prosecution must show that a defendant had the mental state necessary for murder, that is, malice aforethought. *See generally*, *People v. Aaron*, 409 Mich. 672, 713-21, 299 N.W.2d 304, 319-323 (1980); *People v. Turner*, 213 Mich. App. 558, 556, 540 N.W.2d 728, 732-33 (1995) (per curiam). Under Michigan law, malice is established by showing that the defendant possessed one of three mental states: (1) intent to kill; (2) intent to do serious bodily harm; or (3) wanton and willful disregard for the likelihood that the natural tendency of his act is to cause death or great bodily harm. *See Aaron*, 409 Mich. at 733, 299 N.W.2d at 328. Thus, the elements of first degree felony murder are: "(1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in M.C.L. § 750.316." *Turner*, 213 Mich. App. at 566, 540 N.W.2d at 732. Similarly, "[i]n order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Anderson*, 209 Mich. App. 527, 537, 531 N.W.2d 780, 786 (1995); *see also*, *Grant v. Rivers*, 920 F. Supp. 769, 786 (E.D. Mich. 1996); *People v. Younger*, 380 Mich. 678, 681, 158 N.W.2d 493, 495 (1968); *People v. Brown*, 137 Mich. App. 396, 407, 358 N.W.2d 592, 597 (1984).

Further, MICH. COMP. LAWS § 767.39 abolished the common law distinction between aiders and abettors and principals, and provides that aiders and abettors may be prosecuted and convicted as though they had directly participated in the crime. *See People v. Palmer*, 392 Mich. 370, 378, 220 N.W.2d 393, 396 (1974). Aiding and abetting under Michigan law requires proof of three

elements: (1) commission of the underlying crime either by the defendant or some other person; (2) acts or encouragement by the defendant which aided or assisted the commission of the crime; and (3) intent on the part of the defendant to commit the crime or knowledge by the defendant that the principle intended to commit the crime at the time aid or encouragement was given. *See People v. Acosta*, 153 Mich. App. 504, 511-12, 396 N.W.2d 463, 467 (1986) (per curiam). Thus, "[t]o be convicted of aiding and abetting first-degree [premeditated] murder, the defendant must have had the intent to kill or have given the aid knowing the principal possessed the intent to kill." *People v. Buck*, 197 Mich. App. 404, 410, 496 N.W.2d 321, 326 (1992), *rev'd on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993).

2.      *Analysis*

Petitioner contends that the evidence was insufficient because there was no physical evidence which placed him at the scene, no witness who placed petitioner at the scene, no evidence of a robbery or intent to rob, no evidence of aiding and abetting (*i.e.*, that he and codefendant Henry acted in concert), no evidence that linked petitioner's pants to the date of the crime, and no evidence that linked the gunshot residue found on his pants to the murder weapon. The Michigan Court of Appeals rejected petitioner's claim, concluding that the evidence was sufficient to prove petitioner's guilt beyond a reasonable doubt on both a premeditation and felony murder theory. The Court should conclude that this determination was reasonable.

Although there was no direct evidence of petitioner's guilt, as the court of appeals explained there was substantial circumstantial evidence of petitioner's guilt. The prosecution's principal witness testified that when she left the restaurant, petitioner's codefendant and a man he identified as his uncle were in the restaurant. It was undisputed that petitioner is codefendant Henry's uncle.

She also testified that she heard gunshots shortly after leaving the restaurant. The four victims were shot with two different guns, and pants in petitioner's home which were consistent with the pants he was wearing at the restaurant on the night of the murders had gunshot residue. Petitioner initially denied being at the restaurant, but later admitted that he was there on the night of the murder. Further, there was testimony to support that the murders occurred during a robbery, notably testimony that the restaurant was busy that day, that the owner kept the bulk of the money in his pocket but was found with no money on his person, and that the cash register was open and empty. *See Lamb*, 2002 WL 31955204, at *5-*6, slip op. at 5-6. Although there may have been some gaps or inconsistencies in the testimony and evidence it is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). A reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). Viewed in the light most favorable to the prosecution, the evidence presented was sufficient to prove petitioner's guilt of first degree murder, both on a premeditation and felony murder theory. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.    *Ineffective Assistance of Counsel*

Finally, petitioner raises a number of claims that his trial and appellate attorneys rendered

constitutionally inadequate assistance.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Trial Counsel (Claims IV-V & X-XII)*

Petitioner contends that trial counsel was ineffective for failing to: properly pursue his *Brady* claims; investigate and pursue an alibi defense; and request a *Remmer* hearing regarding extraneous jury influences.  Petitioner also contends that he is entitled to habeas relief based on the cumulative effect of counsel's errors.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

*a. Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id.* at 687.  These two components are mixed  questions of law and fact.  *See id.* at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.*  at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.[3]

### b. Failure to Object to Suppression of Evidence (Claims IV & V)

Petitioner argues that counsel was ineffective for failing to properly raise his *Brady* claims

---

[3]Petitioner contends that he is entitled to a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984), such that a showing of prejudice with respect to his ineffective assistance of counsel claims is not necessary. The Court should disagree. Petitioner has pointed to no clearly established Supreme Court precedent requiring application of the presumed prejudice standard in the circumstances present here. The Supreme Court has limited the presumed prejudice standard to three types of ineffective assistance claims: (1) complete denial of counsel; (2) government interference with the right to counsel; and (3) conflicts of interest. *See Smith v. Robbins*, 528 U.S. 259, 287 (2000) (citing *Strickland*, 466 U.S. at 692; *Cronic*, 466 U.S. at 659 & n.25). The Supreme Court has stated that the first category–complete denial of counsel–encompasses both actual and constructive denials of counsel, and that a constructive denial of counsel can occur where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. The Supreme Court has recently explained, however, that for an ineffective assistance claim to come within this limited exception to *Strickland*, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). The distinction is between "bad lawyering" and "no lawyering," *Woodard v. Collins*, 898 F.2d 1027, 1028 (5th Cir. 1990); *see also*, *Moss v. Hofbauer*, 286 F.3d 851, 861 (6th Cir. 2002), and the difference is not one of degree, but one of kind, *see Bell*, 535 U.S. at 697.

Here, petitioner has not demonstrated that counsel completely failed to subject to the prosecution's case to meaningful adversarial testing. Counsel met with petitioner, apparently conducted some investigation, and argued various matters on petitioner's behalf. *See Moss*, 286 F.3d at 859; *Martin v. Mitchell*, 280 F.3d 594, 613 (6th Cir. 2002); *Cooks v. Ward*, 165 F.3d 1283, 1296 (10th Cir. 1998). All of petitioner's claims are run-of-the-mill pretrial and trial error claims subject to the *Strickland* framework. *See, e.g.*, *Patrasso v. Nelson*, 121 F.3d 297, 300 (7th Cir. 1997); *Gregory v. United States*, 109 F. Supp. 2d 441, 450 (E.D. Va. 2000). In short, "[t]he aspects of counsel's performance challenged by [petitioner] . . . are plainly of the same ilk as other specific attorney errors [the Supreme Court] ha[s] held subject to *Strickland*'s performance and prejudice components." *Bell*, 535 U.S. at 697-98.

based on the prosecutor's suppression of evidence. As explained above, petitioner cannot show that the evidence was suppressed, and thus counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (counsel not ineffective for failing to raise meritless objection). Further, even if the evidence was suppressed, as explained above petitioner cannot show that the evidence was material because it went only to the armed robbery and felony murder conviction, and does not call into question his conviction on the alternative theory of first degree premeditated murder. Because petitioner cannot establish materiality under *Brady*, he likewise cannot establish prejudice under *Strickland*. *See Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007); *Snow v. Sirmons*, 474 F.3d 693, 725 n.34 (10th Cir. 2007). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Failure to Present Alibi Defense (Claim X)

Petitioner next contends that counsel was ineffective for failing to investigate and present an alibi defense. He argues that on the night of the murders, he worked as security at Club Famous from 10:00 p.m. until 3:00 a.m. In support of this claim, petitioner submits the affidavit of the club manager. However, petitioner cannot show that counsel was ineffective for failing to pursue this alibi for the simple reason that petitioner admitted in his statement to the police that he was at the restaurant at the time of the murder. In these circumstances, it was not unreasonable for counsel to refuse to pursue an alibi defense which would have contradicted petitioner's own statement to the police. *See Williams v. Prunty*, 16 Fed. Appx. 594, 595 (9th Cir. 2001); *United States v. Davis*, No. 04-CR-85, 2007 WL 1731727, at *4 (N.D. Okla. June 14, 2007); *United States ex rel. Rhoads v. Barnett*, 22 F. Supp. 2d 765, 774 (N.D. Ill. 1998); *cf. Escamilla v. Jungwirth*, 426 F.3d 868, 869-70

(7th Cir. 2005).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Request Remmer Hearing (Claim XI)

Petitioner also contends that counsel was ineffective for failing to request a hearing pursuant to *Remmer v. United States*, 347 U.S. 229 (1954), to investigate extraneous jury influences. Specifically, petitioner contends that whenever his jury was leaving the courtroom, it had to pass by relatives of the victims.  According to petitioner, the victims' family members would engage in improper conversation with the jurors.  Counsel objected to this conversation, and the court interrupted: "There's not to be any conversation about the case in front of the jury at all.  For those family members of the victims who are in the court, when the jury goes out, please do not talk at all relative to this particular – I mean don't talk about anything at all, whether it has to do with this case or whether it has anything not to do with this case, because I don't want to have any appearance of impropriety."  Trial Tr., Vol. VI, at 18-19.  Petitioner contends that counsel should have requested a hearing pursuant to *Remmer*.

In *Remmer v. United States*, 347 U.S. 227 (1954), the Court held:

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer*, 347 U.S. at 229.  Although *Remmer* spoke of a "presumption of prejudice," the Court has subsequently indicated that a defendant alleging improper juror contact must demonstrate actual prejudice.  In *Smith v. Phillips*, 455 U.S. 209 (1982), the Court cited *Remmer* in stating that "[t]his

Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove bias." *Smith*, 455 U.S. at 215. As the Court explained:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith*, 455 U.S. at 217. In light of *Smith*, the presumed prejudice language of *Remmer* is no longer good law; all that is required is a hearing at which the defendant is given the opportunity to establish that the improper contact caused actual prejudice. *See United States v. Pennell*, 737 F.2d 521, 532-33 (6th Cir. 1984); *see also*, *United States v. Olano*, 507 U.S. 725, 739 (1993) (whether viewed as a presumed prejudice test or a case-by-case determination, question in all cases is "did the intrusion affect the jury's deliberations and thereby its verdict."); *United States v. Corrado*, 304 F.3d 593, 603 (6th Cir. 2002). Petitioner contends that counsel should have requested such a hearing.

In rejecting petitioner's motion for relief from judgment on this claim, the trial court concluded that while the record established that some conversation may have occurred in front of the jury, there was no evidence that the conversation was directed at the jury. Further, petitioner had failed to demonstrate any prejudice, particularly in light of the court's admonition to the spectators to not speak in front of the jury. This determination was reasonable. And, here, petitioner presents no evidence regarding the extent or nature of the juror's conversation, nor any evidence regarding prejudice he may have suffered as a result. As noted above, contrary to petitioner's argument and the language of *Remmer*, prejudice is not presumed in this situation under the current governing standards set forth by the Supreme Court. Because there is no evidence of prejudice, and petitioner

makes no other effort to demonstrate prejudice, he has failed to show that counsel was ineffective for failing to request a *Remmer* hearing. *See Garcia v. Bertsch*, 470 F.3d 748, 755-56 (8th Cir. 2006); *Hasan v. Ishee*, No. 1:03-cv-288, 2006 WL 3253081, at *19 (S.D. Ohio Aug. 14, 2006). And, in any event, it is doubtful that a *Remmer* hearing was even required here, where the conversation was not a private juror contact but occurred in open court, and was immediately corrected by the trial judge. *See Rogers v. Howe*, 64 Fed. Appx. 450, 457 (6th Cir. 2003); *Whitehead v. Cowan*, 263 F.3d 708, 723 (7th Cir. 2001); *White v. Smith*, 984 F.2d 163, 166-67 (6th Cir. 1993). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### *e. Cumulative Errors (Claim XII)*

Finally, petitioner contends that he is entitled to habeas relief based on the cumulative effect of counsel's errors. As explained above, however, petitioner has failed to demonstrate that counsel was ineffective with respect to any of his claims, and thus the cumulative effect of counsel's alleged errors does not provide a basis for habeas relief. *See Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 2. *Appellate Counsel (Claims I, X & XII)*

Petitioner also contends that he was denied the effective assistance of appellate counsel. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### *a. Denial of Counsel (Claim I)*

Petitioner first contends that he suffered an actual absence of counsel on his direct appeal which warrants habeas relief without the need to show prejudice. Petitioner's claim is based on the

following sequence of events. On March 17, 2000, Daniel J. Rust was appointed to represent petitioner on his appeal. Attorney Rust filed a brief raising three claims on November 17, 2000. On April 27, 2001, the court of appeals granted Rust's motion to withdraw as counsel. On May 2, 2001, Rose Mary Robinson was appointed as substitute counsel.[4] Robinson did not file her own brief, but did assist petitioner in filing his supplemental *pro se* brief, which was filed on July 23, 2001. On July 15, 2002, Robinson's motion to withdraw as counsel was granted. On September 6, 2002, the trial court appointed Linda Ashford as substitute counsel. On October 3, 2002, Ashford sent a letter to petitioner indicating that although she had been appointed as substitute counsel, she did not accept the appointment because the trial court was unable to furnish her with a copy of the transcripts from petitioner's trial. Meanwhile, on December 17, 2002, the court of appeals issued its decision affirming petitioner's convictions. Petitioner contends that the absence of counsel after Robinson's withdrawal constituted an absence of counsel under *Cronic* for which relief is warranted without a showing of prejudice. The trial court, ruling on petitioner's motion for relief from judgment, concluded that petitioner had failed to establish prejudice, thus implicitly rejecting his *Cronic* argument. The Court should conclude that this determination was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

It is true that the "actual or constructive denial of [appellate] counsel altogether is legally presumed to result in prejudice." *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988). The Supreme Court, however, has repeatedly characterized this rule as requiring the complete denial of counsel on appeal. Thus, in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Court characterized *Penson* has

---

[4]Petitioner contends that Robinson was appointed on July 15, 2002, resulting in a 15 month gap in representation between Rust's withdrawal and Robinson's appointment. However, this is unlikely given that Robinson was permitted to withdraw on July 15, 2002. And, in fact, the order of appointment in respondent's Rule 5 materials indicates that the order was entered on May 2, 2001.

holding that the "*complete* denial of counsel on appeal requires a presumption of prejudice." *Id*. at 483 (discussing *Penson*, 488 U.S. at 88-89) (emphasis added). The Court characterized *Penson* similarly in *Smith v. Robbins*, 528 U.S. 259, 286 (2000). As the Court further explained in *Flores-Ortega*, "[i]n *Cronic*, *Penson*, and *Robbins*, we held that the complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because 'the adversary process itself' has been rendered 'presumptively unreliable.'" *Flores-Ortega*, 528 U.S. at 483 (quoting *Cronic*, 466 U.S. at 659); *see also*, *id*. at 484 (following "the pattern established in *Strickland* and *Cronic*, and reaffirmed in *Robbins*, requiring a showing of actual prejudice . . . when the proceeding in question was presumptively reliable, but presuming prejudice . . . when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent."). Thus, as explained by the Seventh Circuit, "a presumption of prejudice has arisen when the defendant was hampered by 'the *complete* denial of counsel,' meaning that 'the defendant *never* received the benefit of a lawyer's services in constructing potential appellate arguments.'" *Kitchen v. United States*, 227 U.S. 1014, 1021 (7th Cir. 2000) (quoting *Flores-Ortega*, 528 U.S. at 483, and *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994)) (emphasis in original).

Here, unlike in *Penson*, petitioner was neither completely denied counsel on appeal nor deprived of the benefit of a lawyer's services in constructing appellate argument such that the appellate proceeding was presumptively unreliable. On the contrary, petitioner's first appointed counsel filed a notice of appeal and an appellate brief raising three substantial claims. Further, petitioner's second appointed counsel assisted petitioner in filing a *pro se* brief raising five additional claims. The fact that he was without counsel at the time the court of appeals issued its decision does not render the proceeding unreliable; at that point, appellate counsel had reviewed

petitioner's case, identified appellate claims, filed a brief, and assisted petitioner in filing a supplemental *pro se* brief, and the issues were fully formed and briefed. *Penson* is sufficiently distinguishable from petitioner's case that the trial court's refusal to apply the presumed prejudice rule from that case was not unreasonable, particularly in light of the Supreme Court's repeated characterization of that case as involving a complete denial of any counsel on appeal.

The reasonableness of the trial court's decision is buttressed by two additional lines of authority. First, in recent years the Supreme Court has repeatedly emphasized that the bulk of ineffective assistance of counsel claims are governed by *Strickland*, and that the presumed prejudice standard is applicable only in very narrowly circumscribed and previously defined situations. *See Bell v. Cone*, 535 U.S. 685, 695-98 (2002); *Mickens v. Taylor*, 535 U.S. 162, 166-76 (2002); *Roe v. Flores-Ortega*, 528 U.S. 470, 481-86 (2000); *Smith v. Robbins*, 528 U.S. 259, 284-89 (2000). These cases demonstrate that the Court has taken an extremely narrow view on the applicability of the presumed prejudice standard. *See Ouber v. Guarino*, 293 F.3d 19, 32-33 (1st Cir. 2002). This narrow view is difficult to harmonize with the expansive reading of *Penson* advocated by petitioner.

Second, in *Anders v. California*, 386 U.S. 738 (1967), the Court held that appellate counsel may withdraw based on his conclusion that an appeal would be wholly frivolous, so long as counsel: (1) advises the appellate court that an appeal would be frivolous; (2) requests permission to withdraw; and (3) files "a brief referring to anything in the record that might arguably support the appeal." *Id*. at 744. If, in such a case, a defendant can be denied the assistance of counsel in filing any brief without violating the defendant's right to counsel on appeal, it is difficult to see how petitioner's right to counsel on appeal was violated where counsel actual filed a brief on the merits and assisted petitioner in filing his own *pro se* brief raising additional issues. And, indeed, in

*Robbins* the Court held that where counsel files a motion consistent with the requirements in *Anders*, the defendant must show prejudice to establish an ineffective assistance of counsel claim. *See Robbins*, 528 U.S. at 286-87.

In short, petitioner was afforded the benefit of counsel in filing his appeal, raising appellate issues, and briefing those issues, and nothing suggests that the lack of counsel at the time the court of appeals issued its decision made the appellate proceeding unreliable. In light of *Anders* and *Robbins*, and the Supreme Court's decisions explaining and applying the presumed prejudice standard, it cannot be said the that trial court's failure to apply a presumption of prejudice was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, under § 2254(d)(1) petitioner is not entitled to habeas relief on this claim.

### b. Failure to Raise Claims (Claims X & XII)

Petitioner also contends that his appellate counsel were ineffective for failing to raise on his direct appeal the claims asserted in his state court motion for relief from judgment and pursued further in his habeas application. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Robbins*, 528 U.S. at 285-86; *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in this Report, all of petitioner's claims are without merit, and thus petitioner cannot show that counsel were ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of

petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

## III.　　NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives　　　　　　　　　　
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 9/30/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 30, 2008.

s/Eddrey Butts
Case Manager