UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID K. LAMB,

       Petitioner,

          CASE NO. 03-CV-73587-DT

   v.             JUDGE JOHN CORBETT O'MEARA

          MAGISTRATE JUDGE PAUL J. KOMIVES

CARMEN PALMER,

       Respondent.

_____/


**REPORT AND RECOMMENDATION ON PETITIONER'S MOTION FOR
CERTIFICATE OF APPEALABILITY (docket #112)**

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's second motion for a certificate

of appealability.

II.   <u>REPORT</u>:

A.   *Procedural Background*

      Petitioner David K. Lamb is a state prisoner currently confined at Newberry Correctional

Facility in Newberry, Michigan. On September 18, 2003, petitioner filed an application for the writ

of habeas corpus, challenging his 1999 state court convictions for first degree murder and possession

of a firearm during the commission of a felony. Following further state court proceedings, petitioner

filed an amended application on December 12, 2006, raising twelve claims for relief. On September

30, 2008, I filed a Report recommending that the Court deny the petition. On May 18, 2009, the

Court entered an order accepting my recommendation. On June 19, 2009, petitioner filed a notice

of appeal and motion for certificate of appealability, as well as a motion for leave to proceed *in*

*forma pauperis* on appeal.  Further, on October 29, 2009, petitioner filed a motion for relief from judgment pursuant to Rule 60(b).  On January 21, 2010, I filed a Report recommending that the Court deny both petitioner's motion for a certificate of appealability and his Rule 60(b) motion.  The Court entered an Order adopting my Report on March 1, 2010.  The matter is currently before the Court on petitioner's second motion for certificate of appealability, filed on April 7, 2010.  For the reasons that follow, the Court should deny the certificate of appealability.

B.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments.

C.      *Analysis*[1]

1.      *Lack of Transcripts*

Before addressing the merits of his entitlement to a certificate of appealability on the

---

[1]It is questionable whether petitioner's second motion for certificate of appealability is properly before the Court. Petitioner's first request for a certificate of appealability was fully addressed in my prior Report, which was adopted by the Court. Petitioner's second, motion, therefore, is in the nature of a motion for reconsideration. Under Local Rule 7.1, however, "[a] motion for rehearing or reconsideration must be filed within 14 days after entry of the judgment or order." E.D. MICH. LR 7.1(h)(1). Petitioner's second motion, filed on April 7, 2010, was not filed within 14 days of the Court's March 1, 2010, Order adopting my Report. In any event, for the reasons explained below petitioner is not entitled to a certificate of appealability.

underlying habeas claims, petitioner contends that he is entitled to a certificate of appealability because the Court ruled on his claims without first requiring respondent to provide the transcripts of his trial, in accordance with Rule 5, 28 U.S.C. foll. § 2254. The Court should conclude that it did not err in failing to require respondent to file the transcripts.

On habeas review, a district court need not examine the trial records if two conditions are satisfied: (1) the state court opinions summarize the trial testimony or relevant facts; and (2) the petitioner does not quarrel with that summary and instead contends only that the trier of fact should have reached a different conclusion. *See Clark v. Waller,* 490 F. 3d 551, 556 (6th Cir. 2007). A district court is not required to examine transcripts before disposing of a claim where a habeas petitioner's arguments are "readily susceptible to resolution without resort to the transcript." *Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991) (district court did not err in disposing habeas petition without reviewing the trial transcripts, where the district court had before it the parties' briefs, the relevant state court decisions, a copy of an unsuccessful application for further appellate review, and certain grand jury minutes); *see also*, *Maynard v. Dixon,* 943 F. 2d 407, 411 (4th Cir. 1991)(district court did not err in entering summary judgment in habeas corpus case without formally submitted transcript where although court lacked full transcript, it had access to relevant portions of the transcript since they were included in the habeas petition, those excerpts included references to transcript pages, and the habeas petition had been certified as true); *David v. Lavinge*, 190 F. Supp. 2d 974, 986 n. 5 (E.D. Mich. 2002) (court quoted the lengthy state court analysis in full because the analysis thoroughly explained petitioner's claim and because portions of the trial transcript quoted by the state court were missing from the record before the court).

In the present case, the Michigan Court of Appeals' opinion on direct review of petitioner's

conviction summarized the trial testimony and the relevant facts of the case, as did both petitioner's and the prosecutor's briefs in the Michigan Court of Appeals. Nor can petitioner show that the transcripts were necessary to resolve his claims. A number of petitioner's claims failed as a legal matter, regardless of the underlying facts. For example, in his second and third claims petitioner asserted, respectively, that his arrest was illegal and that his subsequent statement to the police should have been suppressed as the fruit of the illegal arrest. Regardless of the facts, these claims fail as a matter of law, the first because an "'illegal arrest or detention does not void a subsequent conviction,'" *see* R&R, dated 9/30/08, at 15 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)), and the second under the rule of *Stone v. Powell*. *See id*. at 15-17. Likewise, petitioner's sixth and eighth claims challenging the bind over and information failed as matter of law independent of anything in the trial transcripts. His variance claim failed because the information was amended well before trial, *see id*. at 23-24, and his sufficiency of the evidence at bind over claim failed because the claim is not cognizable on habeas review, *see id*. at 24-25. Petitioner's fourth and fifth claims, alleging suppression of evidence, failed because the evidence allegedly suppressed–bundled money in the back office of the store–was not material or favorable, because "the validity of the underlying robbery conviction was not called into question by the fact that other valuables which would have been stolen were left behind," *id*. at 20, and because "'the prosecution was not obligated to show that a robbery actually occurred,'" an attempted robbery being sufficient to support the felony murder conviction. *Id*. (quoting *Mahady v. Cason*, 367 F. Supp. 2d 1107, 1118 (E.D. Mich. 2005)). Again, the resolution of this claim did not depend on anything in the trial transcript. In analyzing petitioner's seventh claim, alleging an improper comment by the prosecutor at trial, I relied on petitioner's own quotation of the offending comment, *see id.* at 21, and thus the transcript

was not necessary to resolve this claim.

Petitioner's various ineffective assistance of counsel claims, forming portions of his fourth, fifth, and tenth through twelfth claims, likewise did not require a copy of the transcript for resolution. His claim that counsel was ineffective for failing to object to the prosecution's suppression of evidence failed because the underlying suppression claim failed. *See id*. at 31. His claim that counsel was ineffective for failing to present an alibi defense failed because counsel could not, as a matter of law, be deemed deficient for failing to pursue an alibi defense which would have contradicted petitioner's own statement to the police. *See id*. at 32-33. In this respect, petitioner does not quarrel with the fact, reflected in both his and the prosecutor's briefs in the Michigan Court of Appeals, that he admitted to being at the restaurant at the time of the murder. Petitioner's claim that counsel was ineffective for failing to request a *Remmer* hearing did not require the trial transcripts, because petitioner's very claim is that the trial transcript fails to disclose an extraneous jury influence, and thus a further hearing was required in the trial court. *See id*. at 33-35. Thus, the trial transcripts would have had no bearing on this claim. And petitioner's appellate counsel claims were derivative of his underlying claims, none of which required the trial transcripts, and thus the trial transcripts were not required for a resolution of petitioner's appellate counsel claims.

The only claim which arguably required the transcripts was petitioner's sufficiency of the evidence claim. To be sure, it is ordinarily preferable for the respondent to file the trial transcripts in all habeas cases, and especially in cases in which the petitioner claims that the evidence adduced at trial was insufficient to sustain his conviction. However, the Sixth Circuit has rejected the argument that a transcript is required in all such cases:

> "Now it might appear that such an allegation [insufficiency of the evidence to
> support a conviction] could never be rejected by the habeas corpus judge without his

6

examining the trial record to see whether it contained sufficient evidence to persuade a rational trier of fact of guilt beyond a reasonable doubt. But this is not so where, as here, the testimony at the trial is summarized in the state appellate court's opinion and the petitioner does not quarrel with that summary but simply contends that a rational trier of fact could not have inferred from it guilt beyond a reasonable doubt."

*Loveday v. Davis*, 697 F.2d 135, 139 (6th Cir. 1983) (quoting *Davis v. Franzen*, 671 F.2d 1056, 1057

(7th Cir. 1982)). In rejecting petitioner's sufficiency of the evidence claim, I explained:

> Although there was no direct evidence of petitioner's guilt, as the court of appeals explained there was substantial circumstantial evidence of petitioner's guilt. The prosecution's principal witness testified that when she left the restaurant, petitioner's co-defendant and a man he identified as his uncle were in the restaurant. It was undisputed that petitioner is codefendant Henry's uncle. She also testified that she heard gunshots shortly after leaving the restaurant. The four victims were shot with two different guns, and pants in petitioner's home which were consistent with the pants he was wearing at the restaurant on the night of the murders had gunshot residue. Petitioner initially denied being at the restaurant, but later admitted that he was there on the night of the murder. Further, there was testimony to support that the murders occurred during a robbery, notably testimony that the restaurant was busy that day, that the owner kept the bulk of the money in his pocket but was found with no money on his person, and that the cash register was open and empty.

R&R, dated 9/30/08, at 28-29 (citing *People v. Lamb*, No. 225989, 2002 WL 31955204, at *5-*6,

slip op. at 5-6 (Mich. Ct. App. Dec. 17, 2002) (per curiam)). Not only is this description of the

evidence consistent with both the court of appeals's and the prosecutor's summaries of the evidence,

*see Lamb*, 2002 WL 31955204, at *5-*6, slip op. at 5-6; Pl.-Appellee's Br. on App., in *People v.*

*Lamb*, No. 225989 (Mich. Ct. App.), at 5-9, it is also consistent with petitioner's summary of the

evidence in both his court of appeals brief and his habeas application. *See* Def.-Appellant's Br. on

App., in *People v. Lamb*, No. 225989 (Mich. Ct. App.), at 6-11; Memo. of Law in Supp. of Pet., at

1-3. Thus, although petitioner "takes issue with" the court of appeals's legal "conclusions, he does

not offer any specific dispute with the evidence, as summarized by" the state courts, the prosecutor,

and himself, "on which those conclusions were based." *Clark*, 490 F.3d at 555 (internal quotation

omitted). In other words, "petitioner does not quarrel with th[ose] summar[ies] but simply contends that a rational trier of fact could not have inferred from it guilt beyond a reasonable doubt." *Loveday*, 697 F.2d a 139 (internal quotation omitted). Thus, the Court did not err in ruling on petitioner's sufficiency of the evidence claim without the trial transcript.

For these reasons, the Court should conclude that the failure of respondent to file the state trial transcripts does not call into question the Court's resolution of petitioner's habeas claims, nor does it provide a basis for a certificate of appealability.

2. *Petitioner's Entitlement to the Certificate on His Claims*

Apart from his claim relating to the lack of transcripts, petitioner does not provide any basis for a certificate of appealability that was not raised in his first motion for a certificate and addressed in my prior Report. For the sake of completeness, I include here a verbatim reiteration of my recommendation from that first Report regarding petitioner's entitlement to a certificate of appealability. I also include an additional discussion of petitioner's entitlement to a certificate on the Court's resolution of his Rule 60(b) motion, which was not considered in my Report addressing petitioner's first motion for certificate of appealability.

a. *Arrest Related Claims (Claims II & III)*

In his second and third claims, petitioner contends that his arrest was illegal and the subsequent search of his home and his statement to the police should have been suppressed as the fruit of an unlawful arrest. As explained in my initial Report, petitioner's alleged illegal arrest alone provides no basis for habeas relief because "[i]t is an 'established rule that illegal arrest or detention does not void a subsequent conviction.'" R&R, at 15 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). Likewise, under the rule of *Stone v. Powell*, 428 U.S. 465, 482 (1976), it is clear that

petitioner's Fourth Amendment claims are not cognizable on habeas review. *See* R&R, at 16. And there is no question that petitioner's claim that his statement to the police was the fruit of an illegal arrest is a Fourth Amendment claim barred by *Stone*. *See id*. (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam)). Thus, the Court's resolution of these claims is not debatable among reasonable jurists, and petitioner is not entitled to a certificate of appealability.

### b. *Suppression of Evidence (Claims IV & V)*

In his fourth and fifth habeas claims, petitioner contends that the prosecution suppressed exculpatory evidence relating to the amount of money found in the store after the robbery and murders. As explained in my prior Report, however, the fact that additional money was found in the back of the store was brought out at trial by Officer Rem. *See* R&R, at 19. It is well established that no *Brady* violation occurs where exculpatory evidence is disclosed at trial absent a showing of prejudice by the delay in disclosure. *See Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998). Because petitioner made no argument that such prejudice existed, the Court's resolution of this claim is not debatable among reasonable jurists. *See* R&R, at 20. Further, the Court's resolution of this claim is not reasonably debatable because the Michigan Court of Appeals's determination that the additional money was not favorable or material was clearly reasonable. As explained in my prior Report, the prosecution was not obligated to show that an actual robbery, as opposed to an attempted robbery had occurred. In any event, there was significant evidence that at least one of the victims had been robbed of money on his person, and "the validity of the underlying robbery conviction was not called into question by the fact that other valuables which could have been stolen were left behind." R&R, at 20. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to these claims.

### c. Prosecutorial Misconduct (Claim VII)

In his seventh claim, petitioner contends that the prosecutor misrepresented the facts and engaged in improper bolstering when the prosecutor suggested during rebuttal argument that the pants which petitioner was wearing when he was arrested were the same ones he was wearing at the time of the robbery and that the testimony of petitioner's girlfriend on this point was not credible. However, the prosecutor did not engage in improper bolstering, because the prosecutor's comments did not imply that the prosecutor had special knowledge of facts which were not in front of the jury. *See* R&R, at 22 (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). Nor did the prosecutor misstate the evidence. The pants petitioner was wearing at the time of his arrest were consistent with witnesses' descriptions and contained gunshot residue. It was therefore a fair inference from the record that the pants petitioner was wearing at the time of his arrest were the same ones he wore during the robbery, and the prosecutor was permitted to ask the jury to draw this inference. *See id.* at 22-23. Accordingly, the Court's resolution of this claim is not reasonably debatable and petitioner is not entitled to a certificate of appealabilty with respect to this claim.

### d. Bind Over and Information (Claims VI & VIII)

In his sixth claim, petitioner contends that a fatal variance occurred because the prosecution's amendment of the information at the preliminary examination was based on a *Brady* violation and perjury regarding the amount of money found in the store. As explained above, however, there was no *Brady* violation because the amount of money found in the store was brought out at trial. Nor was there a variance between the information and the proofs at trial, because the information was amended at the preliminary examination, well before trial. And any errors arising from the preliminary examination do not provide a basis for habeas relief. *See* R&R, at 24. Thus, the Court's

resolution of this claim is not debatable among reasonable jurists.

In his eighth claim, petitioner contends that there was insufficient evidence to support his bind over for trial by the district court. Because, as noted above, an "illegal arrest or detention does not void a subsequent conviction," *Gerstein*, 420 U.S. at 119, and because it is well established that "a claim that the evidence offered at the preliminary examination was insufficient for a finding of probable cause is not cognizable on habeas review," R&R, at 25 (citing *David v. Lavinge*, 190 F. Supp. 2d 974, 978 (E.D. Mich. 2002) (O'Meara, J.), the Court's resolution of this claim is not debatable among reasonable jurists. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to his sixth and eighth claims.

### e. Sufficiency of the Evidence (Claim IX)

In his ninth claim, petitioner contends that the evidence was insufficient to prove his guilt beyond a reasonable doubt, principally because there was no physical evidence linking him to the murders. However, it is well established that a "[l]ack of physical evidence does not render the evidence that is presented insufficient." *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction."). Here, there was sufficient circumstantial evidence of petitioner's guilt to support his conviction. The principal prosecution witness testified that petitioner's codefendant and a man he identified as his uncle were in the restaurant with the victims at the time she left, and that she heard gunshots immediately after she left the restaurant. It was undisputed that petitioner was the codefendant's uncle. Further, the victims were shot with two different guns, and gunshot residue was found on petitioner's pants, which were consistent with witness descriptions of the pants he was wearing at the time of the robbery. Further, petitioner

admitted in his statement to the police that he was at the restaurant on the night of the murders. *See* R&R, at 28-29. This evidence, viewed in the light most favorable to the prosecution, was more than sufficient to allow a rational juror to conclude that petitioner was one of the perpetrators beyond a reasonable doubt. Thus, the Court's resolution of this claim is not reasonably debatable, and the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to his sufficiency of the evidence claim.

### f. Ineffective Assistance of Counsel (Claims IV-V & X-XII)

Petitioner also raises a number of ineffective assistance of counsel claims. He contends that his trial counsel was ineffective for failing to: properly pursue his *Brady* claims; investigate and pursue an alibi defense; and request a *Remmer* hearing regarding extraneous jury influences. He also contends that he was denied his right to counsel on appeal, and that his appellate counsel was ineffective for failing to raise his habeas claims on direct appeal.

With respect to the *Brady* issue, as noted above petitioner failed to establish a *Brady* violation. Thus, counsel cannot be deemed ineffective for failing to raise a meritless *Brady* claim. *See* R&R, at 31-32 (citing *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995)). Further, as noted above, petitioner cannot show that the allegedly suppressed evidence was material, and he therefore cannot establish that he was prejudiced by his counsel's performance. *See id.* at 32 (citing *Jennings v. McDonough*, 490 F.3d 1230, 1243 (11th Cir. 2007); *Snow v. Sirmons*, 474 F.3d 693, 725 n.34 (10th Cir. 2007)). Accordingly, the Court's resolution of this claim is not reasonable debatable.

With respect to petitioner's alibi claim, petitioner admitted in his statement to the police that he was at the restaurant at the time of the murder. Although petitioner contends that the statement was the fruit of an illegal arrest, he does contend that he did not in fact make the statement or that

the statement was otherwise involuntary. Counsel cannot be deemed deficient for failing to pursue an alibi defense which would have contradicted petitioner's own statement to the police. *See id.* at 32 (citing *Williams v. Prunty*, 16 Fed. Appx. 594, 595 (9th Cir. 2001); *United States ex rel. Rhoads v. Barnett*, 22 F. Supp. 2d 765, 774 (N.D. Ill. 1998)). Accordingly, the Court's resolution of this claim is not debatable among reasonable jurists.

With respect to the *Remmer* issue, petitioner contends that family members of the victims made comments to the jurors as they entered or exited the court room, and he argues that counsel should have requested a hearing to explore the effects of these comments on the jury. However, petitioner presented no evidence regarding the nature or extent of the comments, nor any evidence regarding any prejudice he may have suffered, particularly in light of the trial court's immediate admonishment of the spectators to refrain from talking as the jury was entering or exiting. *See* R&R, at 34-35. Because he failed to establish prejudice, petitioner cannot show that counsel was ineffective in failing to request a *Remmer* hearing. Further, as explained in my prior Report, it is doubtful that petitioner's claim raises a *Remmer* claim at all because the alleged comments of the victim were not extraneous, but occurred in open court and were immediately corrected by the trial judge. *See id.* at 35 (citing *Rogers v. Howe*, 64 Fed. Appx. 450, 457 (6th Cir. 2003); *Whitehead v. Cowan*, 263 F.3d 708, 723 (7th Cir. 2001); *White v. Smith*, 984 F.2d 163, 166-67 (6th Cir. 1993)). Accordingly, the Court's resolution of this claim is not reasonably debatable.

Petitioner further contends that he was denied his right to counsel on his appeal of right because two of his appellate attorneys withdrew, and there were gaps in the time he was represented. Further, at the time of the court of appeals' decision, his third appointed counsel had indicated to him that she had declined to accept the appointment. As explained in my prior Report, however, it

is clear that petitioner was not denied counsel altogether so that petitioner is entitled to a presumption of prejudice under *Penson v. Ohio*, 488 U.S. 75, 88-89 (1988). Unlike in *Penson*, here "petitioner was neither completely denied counsel on appeal nor deprived of the benefit of a lawyer's services in constructing appellate arguments such that the appellate proceeding was presumptively unreliable." R&R, at 37. Rather, "petitioner's first appointed counsel filed a notice of appeal and an appellate brief raising three substantial claims," and his "second appointed counsel assisted petitioner in filing a *pro se* brief raising five additional claims." *Id*. It is clear that the fact that petitioner was without counsel at the time the court of appeals issued its decision did not render the proceeding unreliable; "at that point, appellate counsel had reviewed petitioner's case, identified appellate claims, filed a brief, and assisted petitioner in filing a supplemental *pro se* brief, and the issues were fully formed and briefed." *Id*. at 37-38. In light of the language of *Penson*, as well as the Supreme Court's decisions in *Anders v. California*, 386 U.S. 738 (1967); *Smith v. Robbins*, 528 U.S. 259 (2000); *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *Mickens v. Taylor*, 535 U.S. 162 (2002), and *Bell v. Cone*, 535 U.S. 685 (2002), *see* R&R, at 38-39, it is not reasonably debatable that the trial court's rejection of this claim was a reasonable application of clearly established Supreme Court law.

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise on direct appeal the claims asserted in his state court motion for relief from judgment and pursued further in his habeas application. However, it is not reasonably debatable that because petitioner cannot show that any of these claims are meritorious and would have succeeded on appeal, he cannot show that counsel was ineffective for failing to raise them. *See* R&R, at 39 (citing *Robbins*, 528 U.S. at 285-86). Because the Court's resolution of petitioner's various ineffective assistance of

counsel claims is not debatable among jurists of reason, the Court should conclude that petitioner is not entitled to a certificate of appealability with respect to these claims.

### g. *Motion for Relief from Judgment*

Finally, petitioner cannot show that the Court's resolution of his Rule 60(b) motion for relief from judgment is reasonably debatable. As I explained in my Report on petitioner's Rule 60(b) motion, a motion for relief from judgment which seeks vindication of a substantive claim for relief will be considered a prohibited successive petition, *see Gonzalez v. Crosby*, 545 U.S. 524, 531-32 (2005), whereas "[t]hat is not the case . . . when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id*. at 532. As the Court explained, "[i]f neither the motion itself nor the federal judgment from which it seeks relief addresses federal grounds for setting aside the movant's state conviction, allowing the motion to proceed as denominated creates no inconsistency with the habeas statute or rules." *Id*. at 533. Petitioner's motion for relief from judgment attacked the underlying conviction on some of the same bases asserted in his habeas application. He contended that the state prosecutor and police officers committed a fraud upon the state court by manufacturing an identification and giving false testimony. His motion attacked not some defect in the integrity of the habeas proceedings, but the substance of this Court's resolution of his claims on the merits. It is not reasonably debatably, therefore, that petitioner's Rule 60(b) motion was a prohibited successive petition. *See id*. at 531-32.

Further, it is not reasonably debatable that petitioner's motion failed to allege a proper basis for relief under Rule 60(b)(3). As I previously explained, petitioner sought relief under Rule 60(b)(3), which provides that the Court "may relieve a party . . . from a final judgment, order, or

proceeding for . . . fraud . . ., misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). However, to be entitled to relief under Rule 60(b)(3), petitioner must identify a fraud perpetrated by respondent in obtaining the judgment in this Court. Petitioner did not identify any such fraud. Rather, he contended that the state prosecutor and police officers committed fraud in state court, the very substance of the claims upon which he seeks habeas relief. "The fraud of which [petitioner] complains is in fact the original alleged misconduct that this Court found [was insufficient for habeas relief]. Such a claim is not cognizable under this Rule." *Moeller v. D'Arrigo*, 163 F.R.D. 489, 493-94 (E.D. Va. 1995); *see also*, *Optimal Health Care Servs., Inc. v. Travelers Ins. Co.*, 801 F. Supp. 1558, 1561 (E.D. Tex. 1992) ("Rule 60(b)(3) is aimed at misconduct which occurs between the time the plaintiff files a lawsuit and the time the court enters judgment. A construction allowing plaintiffs in fraud cases to assert that the fraud underlying their claim is grounds for relief from a judgment on the merits of that claim would impermissibly give those plaintiffs a second bite at the apple. Because Plaintiff's fraud allegation is merely a restatement of the claim which this court dismissed on its merits, Plaintiff fails to allege a fraud by the defendant in obtaining the judgment."). Accordingly, the Court's resolution of petitioner's Rule 60(b) motion is not reasonably debatable.

D.     *Conclusion*

In view of the foregoing, the Court should deny petitioner's second motion for a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/1/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 1, 2010.

s/Eddrey Butts
Case Manager